**Edward Rivera MESSIER,**
**Movant–Appellant,**

v.

**STATE of Missouri, Respondent–**
**Respondent.**

**No. SD 31810.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 6, 2013.

---

Mark A. Grothoff, Columbia, MO, for Appellant.

Karen L. Kramer, Jefferson City, MO, for Respondent.

DON E. BURRELL, J.

Edward Rivera Messier ("Movant") appeals the denial of his Rule 29.15 motion to set aside his conviction for first-degree assault and resulting twenty-year sentence.[1] In two points relied on, Movant claims his appellate counsel was ineffective for not challenging the trial court's refusal to give jury instructions for third-degree assault based upon recklessly causing physical injury, *see* section 565.070.1(1), and recklessly creating a grave risk of serious physical injury, *see* section 565.070.1(4).[2] Because the jury was instructed on the lesser-included offense of second-degree assault and rejected that offense in favor of convicting Movant of the higher offense, appellate counsel was not ineffective for failing to pursue a futile claim. *See State v. Johnson,* 284 S.W.3d 561, 575 (Mo. banc 2009).

### Applicable Principles of Review and Governing Law

"Appellate review of the denial of a post-conviction motion is limited to a determination of whether the findings of fact and conclusions of law of the motion court are clearly erroneous." *Moss v. State,* 10 S.W.3d 508, 511 (Mo. banc 2000). "The motion court's findings are presumed correct." *Storey v. State,* 175 S.W.3d 116, 125 (Mo. banc 2005). We will find clear error only if "after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Moss,* 10 S.W.3d at 511. "In determining whether a refusal to submit an instruction was error, 'the evidence is viewed in the light most favorable to the defendant.'" *State v. Avery,* 120 S.W.3d 196, 200 (Mo. banc 2003) (quoting *State v.*

---

1. All rule references are to Missouri Court Rules (2012). Unless otherwise indicated, all statutory references are to RSMo 2000. "A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Section 565.050.1. " 'Serious physical injury' means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[.]" Section 565.002(6). (Bolding as stated in original.)

2. Sections 565.070.1(1) and (4) provide:

A person commits the crime of assault in the third degree if:
(1) The person attempts to cause or recklessly causes physical injury to another person; or
. . . .
(4) The person recklessly engages in conduct which creates a grave risk of death or serious physical injury to another person[.]

*Westfall,* 75 S.W.3d 278, 280 (Mo. banc 2002)).

To demonstrate ineffective assistance of counsel, a movant must first show that the lawyer's "performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Goodwin v. State,* 191 S.W.3d 20, 25 (Mo. banc 2006). The movant must also demonstrate that the deficient performance caused prejudice. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. In other words, he "must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different." *Glass v. State,* 227 S.W.3d 463, 468 (Mo. banc 2007). Failure to prove either element is fatal. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

█ In the context of a claim of ineffective assistance of appellate counsel, our high court has stated that " 'strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it.' " *Moss,* 10 S.W.3d at 514 (quoting *Reuscher v. State,* 887 S.W.2d 588, 591 (Mo. banc 1994)).

### Facts and Procedural Background

On the evening of April 10, 2006, Springfield Police Officer Chelsea Inlow responded to a Springfield motel to find Robert Nishimoto ("Victim") on a nearby sidewalk. The officer observed that Victim "was bloody. There was blood coming

from his mouth, [and] blood coming from the back of his head." There was also a pool of blood beside Victim.

Crystal Page testified that she had been with Movant, Jennifer Cass, and a couple of other people at a Springfield motel on April 10, 2006. Eventually she left with Movant to "get some alcohol out of the car," and she saw Victim walking on the sidewalk. Movant said, "[H]old on a second[,]" before running to his truck and retrieving a black glove. Movant then punched Victim "in the head[,]" and Victim fell down on the sidewalk, hitting his head. Movant "ke[pt] on punching [Victim]" on the head and face "at least three or four" times. Page said "a bunch of people" ran out to see what was happening, and she realized at some point that Movant had departed. When the police responded to the scene that night, Page falsely told them that she did not "know anything about what happened."

Cass recalled that Movant and Page left the motel room "to go get the liquor[,]" and after "awhile" she went to look for them. When she opened the door to go outside, "[Movant] was standing at the door." Movant "said he had to beat this guy up." Cass looked around the door and saw "a guy laying [sic] on the ground." Cass began "cussing" at Movant and told him to leave. Cass admitted that she was awaiting sentencing on an assault case of her own and hoped to receive a favorable sentence after giving her testimony in Movant's case.

Springfield Police Detective Daron Wilkins interviewed Movant on April 11, 2006. He advised Movant of his *Miranda*[3] rights and noticed that Movant signed the rights-notice form with his left hand. Detective Wilkins noticed that Movant's "left hand was swollen[,]" and showed "some bruis-

---

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ing[.]" He photographed Movant's hand after the interview, and two of the photos were admitted into evidence. A video recording of the interview was made, and portions of it were played for the jury from State's Exhibit 14.[4] The following day, Detective Wilkins recovered a pair of black gloves from Ms. Evans. The detective did not observe blood on the gloves, but he was not surprised based upon his experience with fighting.

Dr. Steven Quinn, "an oral and maxillofacial surgeon," treated Victim and discovered that he had suffered a fracture to the bone around the eye socket and "lots of fractures" to the maxillary bone. In lay terms, the maxillary bone was "smashed[.]" Dr. Quinn said the maxillary injury could have been caused by an object or a "forceful punch" to the cheekbone. He said that if a person was upright the face could "recoil." Victim's injuries would more easily have resulted from being punched while lying down on concrete; such as on a sidewalk. The doctor said that Victim may not have bled "instantaneously[.]" He performed surgery on Victim to reposition some bone, and he screwed a titanium plate across "the zygomatic arch" in Victim's skull to stabilize it for healing purposes. Without the surgery, Victim could have experienced "major interference with [his] ability to work [his] lower jaw." Additionally, unless the bones were correctly positioned, the muscles around the eye could have been "abnormally pull[ed.]" Without treatment of the depressed area and reinforcement of the cheekbone, Victim's face would have looked different, with "a flattening of th[e] whole area of the cheek."

Movant did not testify. Victim did not recall how he suffered his injuries. Victim recalled waking up in the hospital "like three or four days afterwards." He testified that he still suffered "drooping of [his] face[,]" which would also "go numb on [the] right side."

Defense counsel requested that the jury instructions include a verdict director for third-degree assault, labeled as Instruction A, based on the theory that Movant "recklessly caused physical injury" because "the jury may not believe there was serious physical injury[.]" He also requested the submission of another verdict director for third-degree assault, labeled Instruction B, on the theory that

> the jury could conclude that [Movant] was not guilty of assault in the first degree and not guilty of assault in the second degree because of a problem with the mental state, but agree that he was guilty under the instructions [stating] that he recklessly created a grave risk of serious physical injury to [Victim] by striking him in the head with his fist.

Both instructions A and B defined "recklessly" as "to consciously disregard a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation." The requested instructions were denied upon the trial court's finding that "the evidence in this case clearly establishes that there was serious physical injury and not just physical injury, and that a reasonable juror would not acquit on the serious physical injury issues because there was not serious physical injury."

The jury was instructed on first-degree assault based upon "[Movant] knowingly caus[ing] serious physical injury to [Vic-

---

4. The videotape has not been deposited with the Court, but both parties' briefs indicate that during the interview Movant said he saw other men beating Victim, and he helped Victim stand up.

tim] by striking him in the head with his fist[.]" It was also instructed on the lesser-included offense of second-degree assault based upon the theory that Movant "recklessly caused serious physical injury to [Victim] by striking him in the head with his fist[.]"[5] The instruction for second-degree assault stated that "[a] person acts 'recklessly' as to causing serious physical injury if he consciously disregards a substantial and unjustifiable risk that his conduct will result in serious physical injury and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." The jury found Movant guilty of first-degree assault.

Movant's motion for a new trial included his contention that the trial court committed prejudicial error "in not allowing [Movant's] proffered instructions on the lesser included offenses of third degree assault." Movant argued that the refused instructions reflected "statutory lesser included offenses and both were proper lesser included offenses." The trial court denied the motion for new trial and sentenced Movant to twenty years' imprisonment. We affirmed Movant's conviction and sentence in a *per curiam* order, and the mandate issued in November 2008. The trial court's refusal to give the instructions marked A and B was not raised by appellate counsel in Movant's appeal.

An evidentiary hearing on Movant's amended Rule 29.15 motion was held in October 2011. Regarding the points presented in this appeal, Movant testified that he had "maybe one or two phone call conversations and a—about approximately three [instances of] correspondence" with his appellate counsel. Movant said he talked with appellate counsel about the claims he wanted appellate counsel to raise

on his behalf, and Movant did not believe that appellate counsel had indicated to him that any of those claims would be omitted for reasons of appellate strategy.

Movant's post-conviction counsel offered testimony from appellate counsel in the form of an affidavit, which was admitted into evidence as Exhibit 1. Concerning refused Instruction A (addressing third-degree assault predicated on recklessly causing physical injury), appellate counsel affied:

I did not raise such a claim because I did not believe that there was any evidence to support a conviction for assault in the third degree. Therefore, I did not feel that this was a meritorious claim. Other than this, I had no appellate strategy in not raising this claim.

Appellant counsel made the same statement concerning refused Instruction B, which addressed third-degree assault predicated on recklessly creating a grave risk of serious physical injury.

The motion court reviewed the evidence of Victim's injuries and found that "[b]ecause [Victim's] serious physical injury was so obvious, and because the defense theory was that someone else other than [Movant] caused these serious injuries, neither Dr. Quinn nor [Victim] were even cross examined by Movant with regard to the extent of [Victim's] injuries." The motion court also found that "it is not error to refuse an instruction on a lesser included offense based upon the level of injury sustained by the victim."

## Analysis

We have consolidated Movant's two points for ease of analysis as both allege that appellate counsel was ineffective for failing to appeal the refusal of Movant's

---

**5.** "A person commits the crime of assault in the second degree if he: ... [r]ecklessly

causes serious physical injury to another person[.]" Section 565.060.1(3).

proffered jury instructions. Movant claims he was prejudiced by that failure because there is a reasonable probability that this court would have reversed Movant's convictions if the alleged instructional error had been asserted on appeal. We disagree.

■ Assuming, *arguendo*, that the evidence presented at Movant's trial would have supported a claim that the trial court erred in rejecting Movant's proffered instructions,[6] Movant cannot prevail because "[t]he failure to give a different lesser-included offense instruction is neither erroneous nor prejudicial when instructions for the greater offense and *one* lesser-included offense are given and the defendant is found guilty of the greater offense." *Johnson*, 284 S.W.3d at 575 (emphasis as stated in original); *see also State v. Johnston*, 957 S.W.2d 734, 751–52 (Mo. banc 1997) (where defendant was convicted "of the greater of the two instructed crimes, he could not have been prejudiced by the refusal to give an instruction on yet another lesser crime").

Here, a verdict director for the lesser-included offense of assault in the second degree based on Movant's having "recklessly caused serious physical injury to [Victim] by striking him in the head with his fist" was given, but the jury nonetheless found Movant guilty of first-degree assault. As a result, Movant could not have been prejudiced by the trial court's failure to instruct on other lesser-included crimes. *See Johnson*, 284 S.W.3d at 575; *Johnston*, 957 S.W.2d at 751–52.

The claims that Movant asserts his appellate counsel should have raised in his direct appeal would not have required a reversal of Movant's conviction if they had been made. As a result, appellate counsel was not ineffective for failing to assert them. *See Moss*, 10 S.W.3d at 514. Movant's points are denied, and the motion court's order denying post-conviction relief is affirmed.

JEFFREY W. BATES, J., and DANIEL E. SCOTT, P.J., concur.

---

6. Movant is correct that "[t]hird degree assault is a lesser-included offense of first-degree assault." *See, e.g., State v. Hostetter*, 126 S.W.3d 831, 835 (Mo.App. W.D.2004). "An accused is entitled to an instruction on any theory that the evidence tends to establish[,]" *State v. Zumwalt*, 973 S.W.2d 504, 507 (Mo. App. S.D.1998), and, indeed, if the evidence supports different offenses, then the trial court "must instruct on each offense[.]" *State v. Greer*, 348 S.W.3d 149, 154 (Mo.App. E.D.2011). The best practice is to submit the lesser-included offense in addition to the greater offense if there is any doubt about whether the evidence supports the lesser-included offense. *Avery*, 120 S.W.3d at 205.