### STATE of Missouri, Respondent,

v.

### Tracy Edgar GREER, Appellant.

### No. ED 95206.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 20, 2011.

Timothy Forneris, St. Louis, MO, for appellant.

Chris Koster, Atty. Gen., Daniel N. McPherson, Asst. Atty. Gen., Jefferson City, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

The defendant, Tracy Greer, appeals the judgment entered by the Circuit Court of the City of St. Louis following his conviction by a jury of three counts of assault in the first degree, in violation of section 565.050 RSMo. (2000);[1] three counts of armed criminal action, in violation of section 571.015; six counts of endangering a corrections employee, in violation of section 565.085 RSMo. (Supp.2006); and one count of possession of a weapon in a correctional facility, in violation of section 217.360 RSMo. (Supp.2006). The trial court sentenced the defendant to a total of 25 years' imprisonment for these 13 crimes involving six victims.

Because we conclude that the trial court sentenced the defendant to a term of imprisonment exceeding that allowed by law for each of the six counts of endangering a corrections employee, we reverse the trial court's judgment with respect to the defendant's sentences for those counts. We remand the cause with instructions for the trial court to resentence the defendant in accordance with our holding. In all other respects, we affirm the trial court's judgment.

On June 10, 2007, Lieutenant Phillip Sapp was a supervisor on duty at the St. Louis City Justice Center when he received a report of a disturbance in the area of the jail housing the defendant. The lieutenant went to the cell occupied by the defendant and another prisoner, Tyler Johnson. There, the lieutenant smelled urine and feces, and saw a watery substance on the floor outside the cell. The lieutenant also observed that the glass had been knocked out of the cell door, and the light in the cell knocked out. The defendant and Johnson had used a mattress to barricade the door. They had fashioned crude protective gear by wrapping laundry and laundry bags around their heads. The defendant and Johnson yelled obscenities at the lieutenant, and the defendant yelled, "Kill me or I'm going to kill you."

The lieutenant reported the disturbance to Captain Tonya Harry. The captain came to the area, and observed that both the defendant and Johnson were brandishing weapons. The captain instructed the defendant and Johnson to put down their weapons, move to the rear of the cell, and get down on their knees. The men refused. The defendant yelled obscenities at the captain, and told her: "I don't have anything to live for. You all going to have to come in here. You all going to have to kill us before we kill you."

The captain assembled a cell extraction response team consisting of four corrections officers wearing basic riot gear and armed with a shield and batons. Before the extraction team began operations, the captain again ordered the defendant and Johnson to drop their weapons, move to the rear of the cell, and drop to their knees. The men again refused. The extraction team entered the cell where the floor inside was covered with a mixture of lotion and feces. The defendant and Johnson swung homemade shanks at the officers and attempted to stab them. Two officers struggled with the defendant, who twice struck one of the officers with a metal-tipped shank, hitting him on the lip and the back of the head when the officer's helmet fell off. Johnson swung his shank

---

**1.** All statutory references are to RSMo. (2000) except as otherwise indicated.

at the two other officers who approached him, and was swinging, kicking, and trying to stab the officers. The four officers subdued the two men, and removed them from the cell. Officers then searched the cell and recovered several homemade shanks.

The State charged the defendant with three counts of first-degree assault, three counts of armed criminal action, six counts of endangering a corrections employee, and one count of possession of a weapon in a correctional facility. The defendant presented no evidence, but argued that he neither swung a shank at anyone nor attempted to expose anyone to urine or feces. The defendant submitted instructions for second- and third-degree assault and armed criminal action. The trial court refused the defendant's tendered instructions. After deliberating for 21 minutes, the jury found the defendant guilty of all 13 counts as charged. The trial court sentenced the defendant as a persistent offender to sentences of 25 years of imprisonment on each of the charges for first-degree assault, armed criminal action, and possession of a weapon in a correctional facility, and to 15 years on each of the six counts of endangering a corrections employee, all sentences to be served concurrently.

The defendant appeals. In four points, he challenges his sentences on the six counts of endangering a corrections officer, the trial court's refusal to submit instructions for lesser-included offenses on the first-degree assault counts, and the sufficiency of the evidence.

■ In his first point, the defendant claims the trial court plainly erred in sentencing him as a persistent felony offender to a term of 15 years on each of six counts of endangering a corrections employee. He maintains that 15 years exceeds the maximum term of imprisonment allowed for this class-D felony, which for a persistent offender such as the defendant, carries the range of punishment for a class-C felony. The State concedes the trial court erred in this respect, and both parties request remand for resentencing.

The defendant admits this claim is not preserved for appeal and requests plain-error review. Rule 30.20. Plain error is evident, obvious, and clear. *State v. Anderson*, 294 S.W.3d 96, 98 (Mo.App. E.D.2009). To obtain relief under the plain-error rule, a defendant must demonstrate that the error so substantially affected his rights that a manifest injustice or miscarriage of justice would inevitably result if the error were left uncorrected. *Id.* An unauthorized sentence affects substantial rights and results in manifest injustice. *Id.* Therefore, it constitutes plain error for the trial court to impose a sentence in excess of that authorized by law. *Id.*

The jury found the defendant guilty of six counts of endangering a corrections employee, and the trial court sentenced the defendant to 15 years of imprisonment for each count. The offense of endangering a corrections employee is a class-D felony if, as here, the defendant attempts to cause, or knowingly causes, a corrections employee to come into contact with blood, seminal fluid, urine, feces, or saliva. Section 565.085 RSMo. (Supp.2006). The defendant conceded that he was a persistent offender, pursuant to section 558.016.3 RSMo. (Supp.2006). As a persistent offender, the defendant became subject to the range of punishment for a class-C felony. Section 558.016.7(4) RSMo. (Supp. 2006). A class-C felony is punishable by a term of years not to exceed seven years. Section 558.011.1(3) RSMo. (Supp.2006). As a result, the trial court plainly erred when it imposed concurrent sentences of 15 years of imprisonment for each of six

counts of endangering a corrections employee. We grant the defendant's first point.

■ In his second point, the defendant claims the trial court erred in refusing to instruct the jury on the lesser-included offenses of second- and third-degree assault. He contends that the jury could have found that he "did not attempt to kill or cause serious physical injury" to the three officers, but only that he "knowingly caused physical injury," or that he "attempted to cause physical injury." The defendant argues that the evidence created questions as to whether he attempted to kill or cause serious physical injury to three of the corrections officers, or whether the injuries suffered by the three officers constituted "serious physical injury." The defendant cites no actual evidence that would support this conclusion. Rather, he would require the jury to dissect the consistent testimony of the State's four witnesses and simply choose to disbelieve certain uncontroverted parts of it.

Second– and third-degree assault are lesser-included offenses of first-degree assault because they are specifically denominated by statute as lesser degrees of the offense charged. Section 556.046.1(2) RSMo. (Supp.2006). A trial court has no obligation to instruct the jury on a lesser-included offense unless a basis exists for acquitting the defendant of the greater offense charged and convicting him of the lesser-included offense. Section 556.046.2 RSMo. (Supp.2006); *State v. Pond,* 131 S.W.3d 792, 793 (Mo. banc 2004); *State v. Wren,* 317 S.W.3d 111, 123 (Mo.App. E.D. 2010).

■ The trial court must instruct on each offense *if the evidence supports differing conclusions. Pond,* 131 S.W.3d at 794 (emphasis added). However, "[a] lesser[-]included[-]offense instruction is not required where there is strong and substan-

tial proof of the offense charged, and the evidence does not suggest a questionable essential element of the more serious offense charged." *Becker v. State,* 260 S.W.3d 905, 910 (Mo.App. E.D.2008) (quoting *State v. Barnard,* 972 S.W.2d 462, 466 (Mo.App. W.D.1998)). A basis for acquittal of the greater offense requires "some evidence that an essential element of the greater offense is lacking and the element that is lacking must be the basis for acquittal of the greater offense and the conviction of the lesser." *Pond,* 131 S.W.3d at 794 (quoting *Barnard,* 972 S.W.2d at 466). Furthermore, our Supreme Court applies the reasonable-juror standard, which requires an instruction for a lesser-included offense only "if a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been established." *State v. Lowe,* 318 S.W.3d 812, 821 (Mo. App. W.D.2010) (quoting *State v. Williams,* 313 S.W.3d 656, 660 (Mo. banc 2010)).

"A person commits the crime of assault in the first degree if he *attempts to kill* or knowingly causes or *attempts to cause serious physical injury* to another person." Section 565.050 (emphases added). Section 564.011.1 defines the term "attempt."

A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A "substantial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

The State charged the defendant with three counts of first-degree assault, alleging specifically that the defendant and Johnson swung sharp-bladed instruments at three corrections officers, and that such

conduct was a substantial step toward commission of the crime of attempting to kill or cause serious physical injury and was done for the purpose of committing assault against each of the three officers.

In contrast, the defendant urges consideration of second-degree and third-degree assault. A person commits the crime of second-degree assault if he "attempts to cause, or knowingly causes, physical injury to another person by means of a deadly weapon or dangerous instrument[.]" Section 565.060.1(2) RSMo. (Supp.2006). The defendant sought instructions for second-degree assault that would have required the jury to find that the defendant or Johnson knowingly caused physical injury to the officers by means of a dangerous instrument. A person commits third-degree assault if he attempts to cause, or recklessly causes, physical injury to another person. Section 565.070.1(1). The defendant sought instructions for third-degree assault that would have required the jury to find that either the defendant or Johnson attempted to cause physical injury to each officer by punching him. The trial court rejected these instructions.

■ To determine whether a basis exists to acquit the defendant of the offense charged and to convict of the lesser-included offense, the trial court looks at the evidence. *State v. Hibler,* 5 S.W.3d 147, 150 (Mo. banc 1999). Here, to acquit the defendant of first-degree assault, the jury needed to reasonably doubt whether he, acting with Johnson, attempted to kill or to cause serious physical injury to the three officers. *Id.* at 148–49; *Wren,* 317 S.W.3d at 123.

Strong and substantial proof existed of the defendant's guilt of first-degree assault, however, and none of the required elements for first-degree assault were reasonably questionable given the evidence presented at trial. In fact, the proof was so strong that the jury took only 21 minutes to convict on all counts. The State's witnesses testified that the defendant yelled, "You all going to have to kill us before we kill you." As the extraction team entered the cell, the defendant and Johnson held weapons, which they swung wildly, trying to stab the officers. The defendant held a sharpened, metal shank, fashioned from a piece of the cell's light fixture and capable of inflicting fatal injuries. Two officers approached and sought to subdue the defendant, who struck one of the officers in the lip with the shank when the officer's helmet fell off. That officer placed the defendant in a headlock and began removing him from the cell. The defendant broke loose and struck the officer in the back of the head with the shank before the officers could again subdue the defendant. The other two officers approached Johnson, who was "swinging, kicking, and trying to stab" the officers. Johnson also wielded a shank, which both the captain and the lieutenant testified was a weapon capable of inflicting fatal injuries.

Consistent with first-degree assault, strong and substantial proof existed that the defendant and Johnson were attempting to kill or cause serious physical injury to the corrections officers by trying to stab them with weapons capable of inflicting fatal injuries. There was no evidence that any essential element of first-degree assault was lacking. The defendant sought an instruction for second-degree assault that would have required the jury to find that the defendant or Johnson "knowingly caused physical injury to [each officer] by means of a dangerous instrument." However, the defendant points to no evidence in the record that created any reasonable doubt that he, acting with Johnson, attempted to kill or to cause serious physical injury to the three officers. Thus, the

defendant points to no evidence that would support a differing conclusion.

■ Moreover, as to two of the officers, there was no evidentiary basis on which to convict the defendant of second-degree assault, as set forth in his proposed instruction, because two of the officers suffered no physical injury. Likewise, the defendant was not entitled to his proposed instruction for third-degree assault because the evidence did not support such an instruction. No evidence existed that the defendant or Johnson punched the officers. Thus, the defendant was not entitled to instructions for either second- or third-degree assault.

■ Furthermore, the defendant's argument that the evidence created a question as to whether the injuries suffered by the officers constituted "serious physical injury" is flawed. The State charged the defendant in each of the three first-degree assault counts with *attempting* to kill or to cause serious physical injury, and the verdict director so instructed the jury. Therefore, it is immaterial that the defendant might not have succeeded in inflicting "serious physical injury" on any of the officers.

We have reviewed the record, and we find no basis to conclude that a rational fact-finder would acquit the defendant of first-degree assault and convict of second- or third-degree assault based on the consistent testimony of the State's four witnesses. The trial court did not err in refusing to submit the defendant's proposed instructions for second- and third-degree assault. We deny the defendant's second point.

The defendant's two remaining points claim the trial court erred in denying his motion for judgment of acquittal, and thus challenge the sufficiency of the evidence. We review a trial court's denial of a motion for judgment of acquittal to determine whether the State adduced sufficient evidence to make a submissible case. *Wren*, 317 S.W.3d at 119. When a defendant challenges the sufficiency of the evidence, we accept as true all evidence favorable to the State, including all favorable inferences drawn from the evidence, and we disregard all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). We limit our review to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.*

■ The defendant's third point contests the sufficiency of the evidence for the charges of first-degree assault and related armed criminal action involving the two corrections officers who approached and subdued Johnson, the defendant's cellmate. The defendant asserts that the State failed to prove beyond a reasonable doubt that he, acting with Johnson, attempted to kill or cause serious physical injury to two corrections officers because the men neither touched nor struggled with the two officers.

In considering a challenge to the sufficiency of the evidence, we consider each element of the charged crime. *Wren*, 317 S.W.3d at 121. Viewing the evidence in the light most favorable to the State, and granting the State all reasonable inferences therefrom, we consider whether a reasonable juror could find each element beyond a reasonable doubt. *Id.*

■ "A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Section 565.050. Except for certain enumerated felonies not relevant here, "any person who commits any felony under the laws of this state by, with, or through

the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action...." Section 571.015.1. Neither statute requires that the perpetrator physically touch or struggle with the victim. Consequently, the State had to prove that the defendant, acting with Johnson, committed the crime of first-degree assault "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon."

The defendant seeks to add an element of physical contact that is not required to commit either first-degree assault or armed criminal action. The defendant and Johnson wielded shanks, and the defendant yelled that "you all" would have to kill or be killed. Multiple witnesses testified that Johnson swung a shank at both officers who approached him, and that Johnson tried to strike or stab them. Both the captain and the lieutenant testified that a shank is capable of inflicting fatal injuries. Thus, the State produced substantial evidence that the defendant, acting with Johnson, committed first-degree assault against each of these officers when Johnson attempted to kill or cause serious physical injuries by trying to stab the officers. Furthermore, the State adduced evidence that the defendant, acting with Johnson, committed the assault "by, with, or through the use, assistance, or aid of a dangerous instrument." We deny the defendant's third point.

In his fourth and final point, the defendant claims the State failed to prove beyond a reasonable doubt that either the defendant or Johnson committed the crimes of endangering a corrections employee by provoking the captain and the lieutenant to enter the cell where feces or urine was on the floor because neither the captain nor the lieutenant entered the cell during the extraction.

Again, in considering a challenge to the sufficiency of the evidence, we consider each element of the charged crime. *Wren,* 317 S.W.3d at 121. Viewing the evidence in the light most favorable to the State, and granting the State all reasonable inferences therefrom, we consider whether a reasonable juror could find each element beyond a reasonable doubt. *Id.*

A prisoner commits the crime of endangering a corrections employee if he *attempts to cause,* or knowingly causes, the corrections employee to come into contact with blood, seminal fluid, urine, feces, or saliva. Section 565.085.1 RSMo. (Supp. 2006) (emphasis added). The State charged the defendant with endangering a corrections employee in that he *attempted* to cause the captain and lieutenant to come into contact with urine or feces.

The evidence was sufficient to show that the defendant attempted to cause the captain and the lieutenant to enter the cell, and thus to come into contact with urine or feces. Both the captain and the lieutenant testified that the area smelled of urine and feces, and that they firmly believed those to be the substances on the floor. The glass had been knocked out of the cell door, the light in the cell was knocked out, and the door was barricaded with a mattress. The defendant and Johnson fashioned crude protective gear by wrapping laundry and laundry bags around their heads. The defendant and Johnson twice refused to put down their weapons, and shouted at the captain and the lieutenant that: "You all going to have to come in here. You all going to have to kill us before we kill you."

The captain and the lieutenant were responsible for maintaining order and control in the jail. They could not simply allow the defendant and Johnson to take control of a cell and exercise dominion over it indefinitely. The captain and the

lieutenant had a duty to reestablish order, and the defendant and Johnson certainly knew this. The defendant and Johnson orchestrated the incident in an effort to force corrections employees, including the captain and the lieutenant, to enter the cell and to come in contact with urine or feces.

By arguing that the evidence did not show that the captain or lieutenant actually entered the cell, the defendant again seeks to insert an element that is not required for commission of an offense. The jury needed only to find that the defendant *attempted* to cause the captain and lieutenant to come into contact with urine or feces by provoking them to enter the cell.

A reasonable juror could have found that the defendant was provoking the captain and the lieutenant to enter the cell, and thus come into contact with urine and feces, when he and Johnson armed themselves and barricaded themselves in their cell. A reasonable juror could have found that the defendant was provoking the captain and the lieutenant to enter the cell, and thus come into contact with urine and feces, when he and Johnson twice refused to put down their weapons. A reasonable juror could have found that the defendant was provoking the captain and lieutenant to enter the cell, and thus come into contact with urine or feces, when he told them they would have to come in and kill or be killed. That the defendant might not have succeeded in causing the captain and the lieutenant to actually come into contact with urine or feces is immaterial because the State had to prove only that the defendant attempted to cause such contact. We deny the defendant's fourth point.

We reverse the trial court's judgment with respect to the defendant's sentences for the six counts of endangering a corrections employee. We remand the cause with instructions for the trial court to re-sentence the defendant on those counts in accordance with our holding. In all other respects, we affirm the trial court's judgment.

PATRICIA L. COHEN, P.J., and GEORGE W. DRAPER III, J., concur.