

# In the Missouri Court of Appeals
# Eastern District
## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED104046 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | Cause No. 1322-CR03424-01 |
| | ) | |
| RANDELL DAVIS, | ) | Honorable Margaret Mary Neill |
| | ) | |
| Appellant. | ) | Filed: December 6, 2016 |

## I.     Introduction

Randell Davis (Defendant) appeals his conviction of one count of forcible rape under

RSMo § 566.030[1], claiming (1) that the DNA evidence in his case should have been suppressed

as the product of an illegal search under the Fourth Amendment and (2) that there was

insufficient evidence to convict him of rape beyond a reasonable doubt because the victim's

testimony was conflicting. We affirm the judgment of the trial court.

## II.     Factual and Procedural Background

On April 30, 2008, the victim in this case (A.S.) snuck into the basement of 4942 Hurley

Street, home to Defendant, Defendant's mother, and Defendant's aunt, Kim Latcher, with whom

A.S. was in a relationship.[2] A.S. testified that Defendant's mother (Kim Latcher's sister) did not

---

[1] All references are to Mo. Rev. Stat. Cum. Supp. 2006.
[2] At the time of this event, A.S. was 15 years old, Kim Latcher was 17, and Defendant was 18.

1

like her being in the home, so Defendant and Ms. Latcher helped her hide in the basement where Defendant slept. A.S. stated that while she was hiding in the basement Defendant asked her for sex and she refused. She said Defendant then pulled her pants down, pushed her onto her back on the futon, and held her down by her shoulders. She stated she was menstruating at the time and Defendant pulled out her tampon, put a condom on, and had sex with her against her will. Because Defendant's mother did not approve of her being in the house, A.S. did not cry out for help. Afterwards, she ran upstairs to Ms. Latcher and told her what happened. Ms. Latcher called the police and then left the house with A.S., waiting with her on a stoop two doors down from the home.

When the police arrived, A.S. told them she had been raped by Defendant and was taken to the hospital where a rape kit was prepared and seized as evidence. The examining nurse testified from her notes made on May 1, 2008 that A.S. told her the sex took place from behind and her pants were unbuttoned when it began. Prior to this, A.S. testified on cross-examination that she did not remember telling any of the medical personnel that the sex took place from behind. When the defense attorney asked her why she could not remember what she told the examining nurse, A.S. said it was because the hospital interview took place more than seven years prior, when she was only 15 years old. A.S. stated that after being examined at the hospital, she ran away to avoid being placed in a group home. She did not have contact with the police again until 2013 when a new investigator was assigned to her case.[3] A.S. explained at trial that

---

[3] In 2013, Detective Jason Sapienza (Detective Sapienza) was assigned to the Sex Crimes Unit as a detective. A.S. had not met with the prosecutor at that point, and protocol for the department was to assign a detective to follow up with a victim and determine if they wished to meet with the prosecutor. Detective Sapienza contacted A.S. and determined she was interested in assisting the police in the prosecution of this case.

she did not contact the police because she was young and did not know any better, but she assisted them with their investigation once they initiated contact with her.

Officer London Brown (Officer Brown), one of the officers dispatched to the scene, testified at trial that A.S. told him she had been raped by Defendant on the futon in the basement of the home and Defendant used a condom. Officer Brown testified Ms. Latcher told him she lived in the home, gave the police permission to enter the house, and guided them to the basement door. The police went downstairs into the basement, arrested Defendant, and read him his *Miranda* rights. After this, Defendant stated "I didn't touch her" and "the bitch is lying." Officer Brown called for an evidence technician because he saw a comforter on the bed and a condom in open view inside a trash bag at the foot of the bed. Officer Jamie Simpher (Officer Simpher) was the evidence technician who responded to the home. She testified that she took several photographs of the scene, including one of the trash bag's contents. She stated that she did not move anything when she took a photo of the condom in the trash bag. DNA testing revealed the unknown male DNA found on the condom matched the sample taken from Defendant in a buccal swab. A DNA analyst testified that A.S.'s DNA was also present on the condom.

At trial, Defendant stated that he did have sex with A.S. but it was consensual and initiated by her. He testified that when he told the police he did not touch A.S. he meant he did not rape her. Defendant was found guilty following a bench trial on November 12, 2015, and he was sentenced to eighteen years on January 14, 2016. Defendant filed his notice of appeal on January 24, 2016.

a. **The trial court did not err in denying Defendant's motion to suppress physical evidence because the police testified they had permission to enter the home and the evidence was in plain view.**

In his first point on appeal, Defendant argues the trial court erred in admitting the evidence seized by the police from his bedroom because it violated his Fourth Amendment rights. Defendant argues there was no valid exception to the warrant requirement because there was no consent, no exigent circumstances, and the evidence was not in plain view. An appellate court will not reverse a trial court's ruling on a motion to suppress unless the court's decision was clearly erroneous. *State v. Ivy*, 455 S.W.3d 13, 17 (Mo. App. E.D. 2014). We consider the facts and evidence in the light most favorable to the trial court's ruling and disregard any contrary evidence and adverse inferences. *Id.* at 18. "We review the court's findings only to see if they are supported by substantial evidence." *State v. Ford*, 445 S.W.3d 113, 118 (Mo. App. E.D. 2014).

In contrast, appellate courts review alleged Fourth Amendment violations *de novo*. *State v. Plunkett*, 473 S.W.3d 166, 175 (Mo. App. W.D. 2015). "The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). "The prohibition does not apply, however, to situations in which voluntary consent has been obtained… from a third party who possesses common authority over the premises." *Id*; *See also State v. Blair*, 638 S.W.2d 739, 750 (Mo. banc 1982). Additionally, if officers reasonably believe that a person has the authority to consent to the entry into a residence, the warrantless entry is lawful. *Rodriguez,* 497 U.S. at 188-89; *See also State v. Smith*, 90 S.W.3d 132, 141 (Mo. App. W.D. 2002). Defendant argues on appeal that Ms. Latcher did not reside in the home because A.S. stated she and Ms. Latcher would "come and go." However, Officer Brown testified that Ms. Latcher told him she

4

lived there, he believed her statement, and she gave him consent to enter the home, and showed him to the basement. We consider the evidence in the light most favorable to the trial court's ruling and disregard any contrary evidence and adverse inferences. *State v. Ivy*, 455 S.W.3d at 18. Officer Brown's testimony indicates he reasonably believed Ms. Latcher had common authority to give the police consent to enter the home, thus his warrantless entry did not violate Defendant's Fourth Amendment rights. We find there was sufficient evidence to support the trial court's ruling. *State v. Brown*, 18 S.W.3d 482, 484 (Mo. App. E.D. 2000).

Having found the police received permission to enter the basement, we turn to Defendant's argument that the evidence seized was the result of an unlawful search. Evidence in plain view may be seized without a warrant when the police have probable cause to believe it is evidence of a crime. *Arizona v. Hicks*, 480 U.S. 321, 326 (1987). "The plain view doctrine is one of the recognized exceptions to the warrant requirement imposed by the Fourth Amendment to the United States Constitution." *State v. Franklin*, 144 S.W.3d 355, 359 (Mo. App. S.D. 2004). "This doctrine applies when: (1) the officer is lawfully located in a place from which the object can be plainly seen; (2) the officer has a lawful right of access to the object itself; and (3) the incriminating character of the object is immediately apparent to the seizing officer." *Id*.

The police seized two pieces of evidence in this case: one condom and one comforter. Defendant objected to the trial court's admission of this evidence, as well as two photographs showing the condom in the trash bag. Both Officer Brown and Officer Simpher testified the evidence seized was in "plain view." Officer Simpher stated she took photographs of the condom inside the trash bag and did not move anything prior to taking the photographs. Officer Brown testified he could see the condom in the trash bag and identified it in one of the photographs taken by Officer Simpher. Officer Brown knew A.S. had alleged Defendant raped her in the

5

basement while wearing a condom, so the condom was readily apparent as evidence of the crime. He also believed there might have been DNA evidence on the comforter on top of the futon, as A.S. had told him she had been raped on the futon. Officer Simpher testified it is important to seize biological evidence in a rape or sexual assault case when it clearly has evidentiary value. Consequently, the trial court did not err in denying Defendant's motion to suppress. Point one is denied.

**b. The trial court did not err in finding Defendant guilty of forcible rape because there was sufficient evidence upon which a reasonable fact finder could determine Defendant was guilty under § 566.030.**

In his second point on appeal, Defendant argues there was insufficient evidence for a reasonable trier of fact to find him guilty beyond a reasonable doubt because A.S.'s testimony to emergency responders was conflicting with her testimony at trial. "The appellate court's role is limited to determining whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty beyond a reasonable doubt." *State v. Varnell*, 316 S.W.3d 510, 513 (Mo. App. W.D. 2010) (citing *State v. Johnson*, 244 S.W.3d 144, 152 (Mo. banc 2008)). An appellate court reviews the sufficiency of the evidence in a court-tried criminal case using the same standard we apply in a jury-tried case. *State v. Livingston-Rivard*, 461 S.W.3d 463, 466 (Mo. App. S.D. 2015); Rule 27.01.[4] The credibility of witnesses and the weight of testimony are the province of the fact-finder who "may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002).

"A person commits the crime of forcible rape if such person has sexual intercourse with another person by the use of forcible compulsion." § 566.030.1. "Forcible compulsion means

---

[4] All references are to Missouri Supreme Court Rules 2015.

either: (a) Physical force that overcomes reasonable resistance; or (b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of such person or another person." § 556.061(12). Appellate courts look at the totality of the circumstances to determine if the force used was sufficient to overcome reasonable resistance, including: "the relative ages of the victim and accused; the atmosphere and setting of the incident; the extent to which the accused was in a position of authority, domination, and control over the victim; and whether the victim was under duress." *State v. Vandevere*, 175 S.W.3d 107, 108 (Mo. banc 2005).

In the present case, A.S. testified that Defendant "raped" her when she was 15 years old. She stated Defendant was larger than her, had more muscle, and she was physically unable to push him off and move away. Physical force is any force applied to the body that is sufficient to overcome reasonable resistance. *Id*. at 109. "[T]he law does not require or expect utmost resistance to a sexual assault when it appears that such resistance would be futile or would provoke a more serious injury." *Id*. Reasonable resistance is only what is suitable under the facts of a case. *Id*. A.S. stated she told Defendant that she did not want to have sex with him and claimed she was physically unable to push Defendant off of her and get away. She testified that she did not cry out for help because she knew Defendant's mother did not want her in the home. Under these facts, a fact-finder could reasonably find Defendant had sexual intercourse with A.S. by the use of forcible compulsion.

During cross-examination, defense counsel asked A.S. why she told medical workers that Defendant was behind her during the sexual intercourse, as opposed to facing her. A.S. testified she did not remember saying that due to the length of time that had passed since she was interviewed at the hospital. Throughout her testimony, A.S. repeatedly stated Defendant "raped"

7

her and she denied having consensual sex with him at any time. She testified that Defendant held her down by her shoulders, removed her tampon, put on a condom, and then forced his penis into her vagina. Based on the foregoing, we hold there was sufficient evidence from which a trier of fact could reasonably find Defendant committed forcible rape beyond a reasonable doubt. Point two is denied.

## IV.    Conclusion

We affirm the judgment of the trial court.

_____

Colleen Dolan, Judge

Sherri B. Sullivan, P.J., concur.
Roy L. Richter, J., concur.