

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED107622 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | |
| XAVIER PERKINS, | ) | Honorable Christopher E. McGraugh |
| | ) | |
| Defendant/Appellant. | ) | Filed: March 17, 2020 |

## Introduction

Xavier Perkins (Appellant) appeals from the trial court's judgment entered upon a jury verdict convicting him of first-degree murder, attempted robbery, and two counts of armed criminal action. We affirm the judgment of the trial court.

## Factual and Procedural Background

The evidence adduced at trial, viewed in the light most favorable to the verdict, is as follows.

Appellant was living in an apartment complex in O'Fallon, Missouri, in September 2016. Also living in the same apartment complex were Damonte Dixon (Dixon), Ronald Harris (Harris), and L.C.[1] Trevour Fritz (Fritz) was staying with Appellant. Fritz owned a pistol that he

---

[1] L.C. was a juvenile in September 2016 and therefore will be referred to by initials.

kept under his mattress in Appellant's apartment, a fact of which Appellant was aware. Fritz also owned a Chevrolet Cruze, which he often let Appellant and others borrow.

On the evening of September 12, 2016, Appellant, Dixon, Harris, and L.C. borrowed Fritz's car, left their apartment complex and drove to St. Louis. Along the way, the group picked up a fifth individual, J.S.[2] After picking up J.S., the group drove around St. Louis, looking for marijuana and, as Dixon testified, "just doing dumb – dumb stuff," such as trying to steal cars.

Dixon was driving the car when he and the others saw Monica Shaw (Victim) walking down the street. The group decided to rob Victim. Dixon stopped the car, and Appellant and J.S. got out and followed Victim down the street. L.C., who was still sitting in the car, heard Victim say, "God wouldn't want you to do this." He then heard a gunshot and turned in time to see Victim fall to the ground and Appellant standing near her body with the gun in his hand. L.C. watched J.S. run around the corner and then L.C. jumped out of the car and ran down the street. Dixon and Harris remained in the vehicle, and Dixon watched Appellant return to the car, still holding the gun.

J.S. returned to the car and Dixon drove him home before the group went to look for L.C. Dixon located L.C. at a nearby gas station. Dixon, L.C., Harris, and Appellant then drove around and smoked marijuana before returning to O'Fallon, Missouri. On the drive back, Appellant repeatedly asked L.C. if the two of them were "cool." L.C. asked Appellant where he had shot Victim, and Appellant told L.C., "I shot her in the chest." A couple of days after the shooting, Appellant told Dixon that he was the one who shot Victim, and if anyone in the group were to get caught, Appellant would say what happened and "free [them] up."

---

[2] J.S. was also a juvenile in September 2016.

Police dispatch sent out a call over the radio advising of a gunshot victim. An off-duty police officer who was working security nearby responded, finding Victim unconscious and not breathing with a gunshot wound to her chest. Medics transported Victim from the scene by ambulance, but she did not survive. Victim's autopsy revealed her cause of death to be a thoracic-abdominal gunshot wound. The coroner testified the bullet entered Victim's chest and then her abdomen.

A few days later, L.C. became fearful after he saw a report of the murder on the news. L.C. told a high school classmate what he had witnessed. The classmate told the school's resource officer, who relayed the information to the homicide department investigating Victim's murder. This information led to the arrest of Appellant.

The jury found Appellant guilty of all counts as charged by the State of Missouri (State). Appellant was sentenced to concurrent sentences of life without the possibility of parole on Count I, first-degree murder; life on Count II, armed criminal action; ten years on Count III, attempted first-degree robbery; and ten years on Count IV, armed criminal action. This appeal follows.

## Points Relied On

In his first point, Appellant claims the trial court erred in overruling his motion for judgment of acquittal and sentencing him on the first-degree murder conviction because there was insufficient evidence as a matter of law from which a reasonable juror could have found beyond a reasonable doubt the element of deliberation.

In his second and third points, Appellant claims the trial court abused its discretion in sentencing him on Count I to life imprisonment without the possibility of parole because such a

3

sentence violated his rights to due process of law and to be free from cruel and unusual punishment.

In his fourth point, Appellant claims the trial court abused its discretion in overruling his motion for new trial because it violated his right to a fair and impartial jury, in that the court heard evidence that some jurors found Appellant guilty because he had "come into town to kill our people."

## Discussion

### *Motion to Remand for Newly Discovered Evidence*

We first address Appellant's motion for remand on the basis of newly discovered evidence. Appellant's motion claims that after his codefendant J.S. was convicted, J.S. confessed to two fellow inmates that he committed the murder and set up Appellant.

Appellant's motion is not within the time limits permitted for filing a motion for new trial pursuant to Rule 29.11(b) because it was filed more than 25 days after the jury returned its verdict. "Missouri statutes and rules do not provide a specific means for a criminal defendant to present claims of newly discovered evidence after the time to file a motion for new trial has expired." State v. Cook, 307 S.W.3d 189, 191 (Mo. App. E.D. 2010), citing State v. Gray, 24 S.W.3d 204, 208 (Mo. App. W.D. 2000).

"However, an appellate court has the inherent power to prevent miscarriage of justice or manifest injustice by remanding a case to the trial court for consideration of newly discovered evidence presented for the first time on appeal." Benton v. State, 128 S.W.3d 901, 904 (Mo. App. W.D. 2004), citing State v. Mooney, 670 S.W.2d 510, 515–16 (Mo. App. E.D. 1984). "Generally, this Court will not remand a case before an appeal is concluded if the lone fact of

4

newly discovered evidence is not enough to grant a new trial." State v. Terry, 304 S.W.3d 105, 109 (Mo. banc 2010).

"In order to obtain a new trial on the basis of newly discovered evidence, a defendant must show: (1) the newly discovered evidence came to his knowledge after the trial; (2) the defendant's lack of knowledge was not due to lack of diligence on his part; (3) the newly discovered evidence is so material it is likely to produce a different result at a new trial; and (4) the evidence is not merely cumulative or used to impeach a witness's credibility." State v. Gray, 591 S.W.3d 65, 73 (Mo. App. E.D. 2019), citing State v. Shelton, 529 S.W.3d 853, 867–68 (Mo. App. E.D. 2017). "Such claims succeed *very rarely*." State v. Manley, 414 S.W.3d 561, 566 (Mo. App. E.D. 2013), quoting State v. Hannon, 398 S.W.3d 108, 113 (Mo. App. E.D. 2013) (quotation omitted) (emphasis in original).

Appellant seeks to introduce testimony of two fellow inmates of codefendant J.S. Appellant's motion includes the inmates' respective sworn affidavits stating J.S. told the inmate that J.S., and not Appellant, killed Victim.

Assuming, *arguendo*, Appellant is able to meet the first, second, and fourth elements, Appellant has failed to show that the newly discovered evidence is so material it would produce a different result at trial. "Evidence is considered to likely produce a different result at a new trial if it is credible and reasonably sufficient to raise a substantial doubt in the mind of a reasonable person as to the result of a new trial." State v. Stewart, 313 S.W.3d 661, 666 (Mo. banc 2010), citing State v. Jennings, 34 S.W.2d 50, 54–55 (Mo. 1930).

"Testimony from a co-defendant who, after trial, is willing to exonerate the defendant has an inherent lack of credibility." State v. Magee, 911 S.W.2d 307, 312 (Mo. App. W.D. 1995), citing State v. Hamilton, 732 S.W.2d 553, 556 n. 3 (Mo. App. E.D. 1987). This is because "[a]t

5

the time that the co-defendant signifies his willingness to testify, he has been convicted and thus cannot be harmed by testifying untruthfully about the alleged innocence of the defendant seeking a new trial." Id. at 312-13.

Here, Appellant argues that the testimony he seeks to introduce does not have the same inherent lack of credibility because the testimony is not that of his codefendant, J.S., but rather from the two inmates to whom J.S. allegedly confessed.

"[F]or a hearsay statement of another confessing to the offense which may exonerate the accused to be admitted into evidence at trial, '[t]hree circumstances of reliability have been recognized: 1) each confession is in a very real sense self-incriminatory and unquestionably against interest; 2) each statement was spontaneously made to a close acquaintance shortly after the murder occurred; and 3) the statements are corroborated by other evidence in the case.'" State v. Lucas, 559 S.W.3d 434, 443 (Mo. App. W.D. 2018), quoting State v. Taylor, 298 S.W.3d 482, 493 (Mo. banc 2009) (internal citations omitted). All three indicia of reliability must be met for the evidence to be admitted. State v. Anglin, 45 S.W.3d 470, 473 (Mo. App. W.D. 2001).

In the instant case, the confession allegedly made by J.S. to his fellow inmates fails to pass the test for reliability. First, it is questionable whether J.S.'s statements were against his interest. J.S. had already pleaded guilty and received a sentence for his role in Victim's murder, so he would not be harmed by being untruthful about his role. Second, neither of the statements was spontaneously made to a close acquaintance shortly after the murder. One inmate's affidavit stated he met J.S. in 2018, over a year after the murder. The other inmate's affidavit did not include the date J.S. made the confession, but stated, "I can't imagine what he must have been thinking to tell me they had set someone up, seeing as how we are practically strangers." Lastly,

6

these statements are not corroborated by other evidence.  The evidence from the testimony indicated Appellant was standing next to Victim's body with the gun immediately after she was shot and returned to the car still holding the gun.  Further, there was testimony at trial that Appellant told L.C. he shot Victim in the chest.

None of the indicia of reliability weigh in favor of Appellant. This evidence would likely not be admissible and therefore would not likely produce a different result at a new trial. Appellant's motion to remand for newly discovered evidence is denied.

*Point I – Insufficient Evidence of Deliberation*

Appellant's first point challenges the sufficiency of the evidence presented by the State to establish deliberation.  "Where sufficiency of the evidence is in question, this Court's review 'is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of guilt beyond a reasonable doubt.'"  State v. Terry, 501 S.W.3d 456, 459 (Mo. App. W.D. 2016), quoting State v. Bateman, 318 S.W.3d 681, 686–87 (Mo. banc 2010).  "In so doing, the evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict."  State v. Freeman, 269 S.W.3d 422, 425 (Mo. banc 2008), citing State v. Belton, 153 S.W.3d 307, 309 (Mo. banc 2005).  "As such, this Court will not weigh the evidence anew since 'the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case.'"  Id., quoting State v. Crawford, 68 S.W.3d 406, 408 (Mo. banc 2002).  "We do 'not act as a super juror with veto powers'; instead, we give 'great deference to the trier of fact.'"  State v. Frazier, 404 S.W.3d 407, 414 (Mo. App. W.D. 2013), quoting State v. Miller, 372 S.W.3d 455, 463 (Mo. banc 2012) (internal quotations omitted).

7

"A person commits the offense of murder in the first degree if he or she knowingly causes the death of another person after deliberation upon the matter." Section 565.020.1.[3] Deliberation is "cool reflection upon the matter for any length of time, no matter how brief." Section 565.002(3). "Deliberation is not a question of time—an instant is sufficient—and the reference to 'cool reflection' does not require that the defendant be detached or disinterested. Instead, the element of deliberation serves to ensure that the jury believes the defendant acted deliberately, consciously and not reflexively." State v. Nathan, 404 S.W.3d 253, 266 (Mo. banc 2013).

"Direct proof of a required mental state is seldom available, and the mental state may be proved by indirect evidence and inferences reasonably drawn from the circumstances surrounding the slaying." State v. Johns, 34 S.W.3d 93, 110 (Mo. banc 2000), citing State v. Clayton, 995 S.W.2d 468, 482 (Mo. banc 1999). "Further, deliberation may be inferred from the circumstances surrounding the crime, and such an inference is supported by a lack of concern for and a failure to attempt to aid the victim." State v. Alexander, 505 S.W.3d 384, 393 (Mo. App. E.D. 2016), citing State v. Moore, 949 S.W.2d 629, 631, 633 (Mo. App. W.D. 1997).

Bringing a gun to a crime scene supports a finding of deliberation. See State v. Davis, 905 S.W.2d 921, 923 (Mo. App. E.D. 1995) ("The jury could have concluded that the defendant had formed a deliberate purpose of using the gun during his criminal enterprise if necessary to accomplish his ends."); State v. Stacy, 913 S.W.2d 384, 387 (Mo. App. W.D. 1996) ("A reasonable inference can be drawn that by bringing a deadly weapon to commit the crime he had planned, [the defendant] reasonably anticipated the use of the weapon. It is sufficient to show that the defendant merely considered taking another's life in a deliberate state."). In the instant

---

[3] All statutory references are to RSMo 2000 as updated through 2016 unless otherwise indicated.

case, the jury could reasonably infer Appellant brought the gun with him from O'Fallon to St. Louis because he had the deliberate purpose of using the gun during a robbery if necessary.

Choosing to use a gun during a robbery supports a finding of deliberation. See Davis, 905 S.W.2d at 923 ("defendant therefore made a decision to use the weapon he was carrying when he was confronted by his intended robbery victim. This demonstrates deliberation."). Here, the jury could reasonably infer Appellant made the decision to use the gun during the attempted robbery[4] when Victim confronted him, which shows deliberation.

Having ample opportunity to terminate the crime prior to the killing supports a finding of deliberation. State v. Perdomo-Paz, 471 S.W.3d 749, 763 (Mo. App. W.D. 2015), citing State v. Olivas, 431 S.W.3d 575, 580 (Mo. App. W.D. 2014). The jury could reasonably infer Appellant had ample opportunity to terminate the crime when Victim said, "God wouldn't want you to do this." Instead, Appellant made the decision to use the gun to shoot her, showing his deliberation.

"While the jury was not compelled to find deliberation from the evidence, the evidence was clearly sufficient to allow the jury to draw this inference." State v. Johns, 34 S.W.3d 93, 111 (Mo. banc 2000). An inference of Appellant's deliberation was further reinforced by his use of a deadly weapon to shoot Victim in the chest, and by the fact that he and his friends drove away and left Victim after the shooting. State v. Alexander, 505 S.W.3d at 393.

Appellant argues Dixon and L.C. gave inconsistent testimony such that a heavy shadow of doubt was cast as to whether what either of them said was true, and the effect thereof was that no reasonable jury could convict Appellant based on either Dixon's or L.C.'s testimony. However, "[t]he credibility of witnesses and the weight of testimony are the province of the fact-

---

[4] We note that Appellant has not challenged the sufficiency of the evidence related to his conviction for attempted robbery. The jury instruction given stated that for the jury to find Appellant guilty of attempted robbery, they had to find and believe from the evidence that Appellant pointed a handgun at Victim and demanded her property.

finder." State v. Ferguson, 568 S.W.3d 533, 540 (Mo. App. E.D. 2019), citing State v. Davis, 505 S.W.3d 401, 405 (Mo. App. E.D. 2016). "As the trier of fact, the jury is the sole arbiter of witness credibility, and it is free to believe or disbelieve all, part, or none of any witness's testimony." Id., quoting State v. Armstrong, 560 S.W.3d 563, 574 (Mo. App. E.D. 2018). Because the evidence and the reasonable inferences derived therefrom were sufficient for a rational juror to find beyond a reasonable doubt that Appellant deliberated before causing Victim's death, Point I is denied.

*Points II and III*

In Points II and III, Appellant claims the trial court erred in sentencing him to life without the possibility of parole for murder in the first degree.

In Point II, Appellant claims an abuse of the trial court's discretion because he was only 18 years, 4 months, and 28 days old when he shot Victim, and he presented an expert's testimony he was emotionally more like a 13- or 14-year-old.

In Point III, Appellant claims an abuse of the trial court's discretion because the first-degree murder statute was unconstitutional as applied to him. Because Appellant challenges the constitutionality of the statute under which he was convicted, we begin with Point III, as we must first consider whether this Court has jurisdiction.

"The Missouri Constitution vests the Missouri Supreme Court with exclusive appellate jurisdiction in all cases involving the validity of a statute." State v. Conner, 583 S.W.3d 102, 113 (Mo. App. E.D. 2019), citing State v. Henry, 568 S.W.3d 464, 479 (Mo. App. E.D. 2019). "If a constitutional claim has not been properly preserved for appellate review, jurisdiction lies in the appellate court rather than the Supreme Court of Missouri." Id., citing Sharp v. Curators of Univ. of Mo., 138 S.W.3d 735, 738 (Mo. App. E.D. 2003).

10

"To preserve a constitutional claim of error, the claim must be raised at the first opportunity with citation to specific constitutional sections." Conner, 583 S.W.3d at 113, quoting State v. Driskill, 459 S.W.3d 412, 416 (Mo. banc 2015). "The earliest opportunity to raise a constitutional challenge to the charging statute is by a pretrial motion to quash the indictment." State v. Cerna, 522 S.W.3d 373, 382 (Mo. App. E.D. 2017), citing State v. Newlon, 216 S.W.3d 180, 184 (Mo. App. E.D. 2007).

Appellant has not properly preserved this claim for our review, as he raised this issue for the first time in his motion for new trial. "The motion for new trial was not the first opportunity to raise this issue." Conner, 583 S.W.3d at 113, citing Mayes v. St. Luke's Hosp. of Kansas City, 430 S.W.3d 260, 268 (Mo. banc 2014). Because Appellant's claim was not properly preserved, "we have jurisdiction to address the merits of this constitutional claim under plain error review." Id., citing Sharp, 138 S.W.3d at 738.

"[T]o obtain relief under plain error review, the defendant must show that an evident, obvious, and clear error affected a substantial right resulting in manifest injustice or a miscarriage of justice. It is the defendant's burden to demonstrate that the error prejudiced him. An unauthorized sentence affects substantial rights and results in manifest injustice and it is plain error for a trial court to impose a sentence in excess of that authorized by law." State v. Bates, 464 S.W.3d 257, 266–67 (Mo. App. E.D. 2015), citing State v. Greer, 348 S.W.3d 149, 153 (Mo. App. E.D. 2011) (internal citations omitted).

Appellant contends the first-degree murder statute was unconstitutional as applied to him because the life without the possibility of parole sentence was grossly disproportionate to the crime Appellant was accused of committing. This Court addressed a nearly identical argument in State v. Bates. There, the defendant was convicted of first-degree murder for an offense he

11

committed when he was 18 years and 11 days old.  Id. at 268.  The defendant appealed, claiming because of his age and learning disabilities the sentence violated the principle of proportionality as well as his constitutional right to due process of law and protection against cruel and unusual punishment.  Id. at 266.  This Court affirmed the trial court's decision and held the defendant's contention he committed the murder shortly after turning 18 was of no consequence because a clear line is necessary and "the age of 18 is the point where society draws the line for many purposes between childhood and adulthood."  Id. at 268, quoting Graham v. Florida, 560 U.S. 48, 74–75 (2010).

Similar to the defendant in Bates, Appellant has cited no authority suggesting the Eighth Amendment bar against imposing a mandatory life-without-parole sentence on a juvenile in a homicide case should be extended to adult offenders.  The trial court did not plainly error in holding the first-degree murder statute was constitutional as applied to Appellant.

Appellant has failed to show that an evident, obvious, and clear error affected a substantial right resulting in manifest injustice or a miscarriage of justice.  Point III is denied.

We now turn to Point II, which claims the trial court abused its discretion in sentencing Appellant to a life-without-parole sentence for his first-degree murder conviction.  The first-degree murder statute mandates the sentence given by the trial court.  See Section 565.033.2 ("The offense of murder in the first degree is a class A felony, and, *if a person is eighteen years of age or older at the time of the offense, the punishment <u>shall</u> be either death or imprisonment for life without eligibility for probation or parole*, or release except by act of the governor.") (emphasis added).  Because the jury found Appellant guilty of first-degree murder, and Appellant was 18 years at the time of the offense, the trial court properly sentenced Appellant. See Burnett v. State, 311 S.W.3d 810, 814 (Mo. App. E.D. 2009) ("When the sentence imposed

is within the range prescribed by statute, the sentence generally will not be found excesssive, or grossly disproportionate, to the crime committed."). Appellant has not provided any reason as to how the trial court abused its discretion in sentencing Appellant to the statutory mandatory sentence. Point II is denied.

*Point IV*

In his final point, Appellant claims the trial court abused its discretion in overruling his motion for new trial because it violated his right to a fair and impartial jury, in that the court heard evidence some jurors found Appellant guilty because he had "come into town to kill our people."

A trial court's ruling on a motion for new trial based on juror misconduct will not be disturbed on appeal unless the trial court abused its discretion. Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d 81, 86-87 (Mo. banc 2010), citing Alcorn v. Union Pac. R.R. Co., 50 S.W.3d 226, 246 (Mo. banc 2001) (overruled on other grounds). "A trial court abuses its discretion if its ruling 'is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" Id. at 87, quoting Wingate by Carlisle v. Lester E. Cox Med. Ctr., 853 S.W.2d 912, 917 (Mo. banc 1993). "When reasonable minds can disagree as to the action taken by the trial court, then the trial court has not abused its discretion." State v. Michael, 234 S.W.3d 542 (Mo. App. E.D. 2007), citing State v. Edberg, 185 S.W.3d 290, 293 (Mo. App. S.D. 2006).

"While Missouri courts generally hold a juror may not impeach a unanimous, unambiguous verdict, two narrow exceptions exist." Fonville v. State, 563 S.W.3d 794, 801 (Mo. App. W.D. 2018); see also Smith v. Brown & Williamson Tobacco Corp., 410 S.W.3d 623, 642 n.8 (Mo. banc 2013). The exception that applies here "allows juror testimony when a juror

13

makes statements evincing ethnic or religious bias or prejudice during deliberations." Id. (internal quotations omitted).

"The ethnicity or religion of any party or witness unrelated to the evidence should have no bearing on the outcome of a trial." Fleshner, 304 S.W.3d at 90. "Accordingly, if a party files a motion for new trial alleging there were statements reflecting ethnic or religious bias or prejudice made by a juror during deliberations, the trial court should hold an evidentiary hearing to determine whether any such statements occurred." Id. at 89. "If the trial court finds after conducting a hearing that such biased or prejudicial statements were made during deliberations, then the motion for a new trial should be granted as the parties would have been deprived of their right to a trial by 12 fair and impartial jurors." Id. at 89-90.

Here, Appellant filed a motion for new trial based on juror misconduct, stating in relevant part:

> Here [a juror] told defense counsel that comments were made by other jurors, among those, he believes one was the foreperson, in which it was said, "We are not going to allow someone from O'Fallon to come into our town to commit this crime." Given the demographic composition of these respective areas. [sic] This comment was implicitly racist and biased, given the defendant was white, the victim was African-American, as was the majority of the jurors were African American. [sic]

> Because these biased and prejudicial statements were made during jury deliberations, defendant was deprived of his right to twelve "fair and impartial jurors" as guaranteed by the 6th and 14th Amendments of the United States Constitution and Article1, [sic] Section 18(a) of the Missouri Constitution.

The trial court conducted an evidentiary hearing on Appellant's motion. The referenced juror testified that on the first evening of trial, after he returned home, he was reflecting on what he heard that day and the thought came to his mind that the defendant was not even from St. Louis but rather had come from out of town and into his city to commit the crime. The juror testified he brought this up to the other jurors and told them that "these people, this guy, wasn't

even from St. Louis" but rather was "from out of town [and] came into our city to do this." The juror also testified that to the best of his recollection, the foreperson had said on the second day of trial that "[t]hey came into town to kill our people…." On cross-examination, the juror was asked if anyone had mentioned race, and he testified none of the jurors, himself included, mentioned race. He further testified that race did not enter into his deliberation.

The trial court announced that while it had permitted the inquiry into juror misconduct pursuant to the holding in <u>Fleshner</u>, nothing in the juror's testimony indicated a comment was made or discussions were held as related to the ethnicity or religion of any party or witness. As such, the trial court denied Appellant's request for a new trial, finding <u>Fleshner</u> did not apply.

We agree. Nothing in the record indicates the comments made regarding Appellant residing in O'Fallon and traveling to St. Louis to commit crimes were related to ethnicity or religion. The comments can reasonably be interpreted as the jurors taking issue with people from other communities coming into the city to commit crimes, irrespective of the races of anyone involved. Because the comments were not clearly indicative of racial bias and reasonable minds can disagree as to their meaning, the trial court did not abuse its discretion in overruling Appellant's motion for new trial. Point IV is denied.

<u>Conclusion</u>

The trial court's judgment is affirmed.

_____
SHERRI B. SULLIVAN, J.

Mary K. Hoff, P.J., and
Angela T. Quigless, J., concur.

15